IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**RAPHAEL FLOWERS**                                                                      **PETITIONER**

v.                                                           **No. 4:23CV131-SA-JMV**

**CAPTAIN LAQUITA MEEKS, ET AL.**                                    **RESPONDENTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Raphael Flowers, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Section 1983 provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants forcibly administered medication to him (an injection) against his will – and used excessive force to do so.[1]

After reviewing Flowers' complaint, the court issued an order for him to show cause why all defendants – except Nurse Stewart, Breanna Hall, C. O. Charlie Thomas, and Sgt. Brown – should not be dismissed from this case for failure to state a claim against them upon which relief could be granted. The plaintiff has responded to the order, and the matter is ripe for resolution.[2] For the reasons set forth below, all defendants – except Nurse Stewart, Breanna Hall, C. O. Charlie Thomas,

---

[1] It appears that Flowers was receiving psychiatric care during the relevant period, as he recounts in his amended complaint, "Nurse Stewart stated the mental health doctor ordered the injection." Doc. 5 at 10.

[2] In his initial response to the show cause order, Flowers requested additional time to supplement his response because the Inmate Legal Assistance Program had not delivered the cases he had requested, hampering his efforts to conduct research. He then filed a supplement to his response, which the court has considered. In any event, the court provided the relevant authority on the issues presented; the plaintiff needed only to supply additional facts showing the various defendants' involvement in the incident.

and Sgt. Brown – will be dismissed with prejudice from this case for failure to state a constitutional claim.

## Plaintiff's Allegations[3]

Raphael Flowers is an inmate in the custody of the Mississippi Department of Corrections ("MDOC") and currently housed at the Wilkinson County Correctional Facility ("WCCF") in Woodville, Mississippi. The events relevant to the allegations in his complaint took place at the Mississippi State Penitentiary ("MSP" or "Parchman") in Parchman, Mississippi, between the time of his arrival at 29-L Building on September 11, 2021, and his eventual transfer out of the MSP to WCCF on February 3, 2022. Doc. 5 at 13.

Flowers alleges that the victim of his crime is the niece of defendant Captain Laquita Meeks (a guard on staff at his housing unit at the MSP), and he believes Meeks is "trying to have [him] killed" in retribution. Doc. 5 at 9. On November 22, 2021, Flowers had a dentist appointment for an abscessed tooth, but Captain Meeks and Nurse Stewart canceled the appointment. *Id*. at 10. Captain Meeks told Stewart, "All he needs is a needle put on his ass."[4] *Id*. Sgt. Brown, Transportation Officer Charlie, and Breanna Hall then placed Flowers in leg irons and waist chains and transported him to the Unit 42 hospital located on Parchman grounds.[5] *Id*. They jerked Flowers' leg iron chain, causing him to fall backwards and hit his head on the floor. *Id*. The officers then turned Flowers onto his right side, and Nurse Stewart gave him an injection in his left hip. *Id*. Flowers asked Stewart why he had received the injection, and Stewart answered, "Doctor's order." *Id*. Flowers asked the doctor's name,

---

[3] In the interest of clarity and continuity, the court will repeat the facts and much of the discussion from the show cause order.

[4] Given the events that transpired immediately after Meeks' comment, it is clear that she was referring to an injection of psychoactive medication.

[5] The plaintiff's allegations do not reveal why these defendants felt the need to restrain him – or why Meeks believed he needed an injection.

but Stewart would not disclose it. *Id*. Flowers told them that there was no reason for the injection, and he neither requested nor wanted it. *Id*. Stewart also refused to tell Flowers what medication was administered. *Id*.

Flowers began jerking out of control, and Charlie yelled that Flowers was trying to kill him. *Id.* at 10. Charlie grabbed and pulled Flowers' groin until he fell to his knees. *Id*. Officer Charlie then called to Sgt. Brown, who attempted to close the holding cell gate, which almost hit Flowers' head. *Id*. Brown placed his knees on Flowers' head and neck, pinning him to the floor, and Flowers tried to tell Brown that he could not breathe. *Id*. K-9 Officer Craig approached and twice told Brown to remove his knees from Flowers, but Brown said, "He needed it." *Id*. Flowers suffered a broken tooth during the scuffle. *Id*. Officer Craig and Paul Salley radioed for help, and Flowers was placed on suicide watch. *Id*. Nurse Stewart then told him that the mental health doctor had ordered the injection. *Id*.

Flowers was later tested for illegal drug use, and the tests came back negative. *Id.* at 11. K-9 Officer Winter, Lt. Kilpatrick, and Medstat Whitehall attended the testing, and Flowers told them that Captain Meeks was trying to kill him. *Id*. The next morning, November 23, 2021, Flowers asked the mental health doctor if she ordered the injection; she answered, "No," but said she would look into the situation. Doc. 5 at 12.

On January 31, 2022, some two months later, Flowers expressed his concern regarding his fear that Captain Meeks wished to kill him to K-9 Officers Winter, Erica Hall, Flagg, Booker, and Lt. Jackie Rice – and asked to speak with Corrections Investigation Division ("CID") (the internal affairs body of MDOC) about the matter. *Id*. The officers laughed and told him that Warden Detrick Munford would speak with him. *Id*. Munford told Flowers that he did not believe Meeks would do that. *Id*. Flowers pointed out that Meeks is the aunt of his victim, and Munford asked, "Where are you trying to get moved?" *Id*. Flowers replied that he would like to be moved to the Central

Mississippi Correctional Facility ("CMCF") – and would contact MDOC Commissioner Burl Cain about being moved. *Id*. Munford said to give him a few days, but Flowers did not see or speak with Munford again. *Id*. Flowers' family and friends contacted CID Chief of Security Sonya Stanciel, who stated that she was on the way to speak with him, but she did not do so. *Id*. His friend then called Stanciel, who hung up. *Id*.

On February 2, 2022, two days later, the mental health doctor, CID Officers Wright and Meeks, and an unknown female CID officer spoke with Flowers. *Id*. at 12. He told them that Captain Meeks had been trying to kill him and had Nurse Stewart inject an unknown substance into his left hip. *Id*. Flowers requested an immediate transfer to another facility because Captain Meeks is related to the victim of his crime. *Id*. Ms. Wright asked him where he would like to be transferred, and he said, "CMCF" so he could speak with Commissioner Cain about the assault by the staff during the injection process. *Id*.

The next morning, February 3, 2022, he was transferred back to a cell in Unit 29. *Id*. Chaplain Jamison visited and stated that Flowers' family had contacted him and asked for a wellness check – and that Flowers needed to get his family to help him be transferred because "they are trying to kill you." *Id*. The Chaplain encouraged him to write to Commissioner Cain, and Flowers explained that he had already sent a sensitive issue grievance to Commissioner Cain but had not heard back. *Id*. Flowers told the Chaplain that he is in pain all over his body and did not feel that way until after the injection. *Id*. He also has severe headaches and hot and cold spells. *Id*. The Chaplain said he would tell Flowers' family and see what he could do to help. *Id*.

Flowers was transferred to WCCF that day (February 3, 2022), and once he arrived there, inmate Nathaniel Brent ("Nate") approached him and told him that Captain Meeks paid inmate Joe Moffit (who was housed in Unit 29-D Building) to call and ask Nate how to "do voodoo." Doc. 5 at 13. According to Nate, Meeks had threatened to harm his family if he did not reveal the secret, so he

told Meeks how to practice voodoo. *Id*. Now Nate is "in [Flowers'] head" all the time. *Id*.

As a result of these events, the plaintiff has suffered a broken tooth, severe pain, swelling, and bruises to the back of his head, his groin, the left side of his face and neck. Doc. 5 at 16. In addition, the injection into his left hip caused pain throughout his entire body, memory loss, hot and cold spells, and persistent severe headaches. *Id*.

### Defendants Who Were Personally Involved in Injection Incident:
### Stewart, Brown, Thomas, and Breanna Hall

The plaintiff alleges that defendants Nurse Stewart, Sergeant Brown, Corrections Officer Charlie Thomas, and Transportation Officer Breanna Hall were all present during the forced injection incident and participated in it. Nurse Stewart administered the injection. Brown, Thomas, and Breanna Hall yanked Flowers' leg chains, causing him to fall and hit his head. Brown also pinned the plaintiff, who was restrained, to the floor by putting his knees on the plaintiff's head and neck, and later tried to close the gate on the plaintiff. Defendant Thomas also squeezed the plaintiff's groin until he crumpled to the floor. The guards used the force described to subdue Flowers so that Nurse Stewart could administer the injection. Based on his allegations, the plaintiff has stated a § 1983 claim against these four defendants for administering medication to him against his will. In addition, he has stated a claim against defendants Breanna Hall, C.O. Charlie Thomas, and Sgt. Brown for use of excessive force during the incident. The court will issue separate process and scheduling orders to establish case management deadlines.

### Inmates Are Not State Actors: Brent, Moffit

Relief under 42 U.S.C. § 1983 is only available to preserve a plaintiff's federal constitutional or statutory rights against a defendant acting *under color of state law*. *See* 42 U.S.C. § 1983. Thus, a § 1983 plaintiff may only pursue his civil rights claims against someone who is a state actor. As inmates, defendants Brent and Moffit do not act on behalf of the state government; as such, Flowers' allegations against these defendants will be dismissed with prejudice for failure to state a § 1983 claim

upon which relief could be granted.

### No Personal Involvement in the Injection Incident: Meeks, Munford, Cain, Booker, Rice, Flagg, Winter, Kilpatrick, and Erica Hall

A defendant in a § 1983 action must be personally involved or causally connected to the incident in some way. *See Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). As set forth above, the plaintiff's allegations against defendants Meeks, Munford, Cain, Booker, Rice, Flagg, Winter, Kilpatrick, and Erica Hall reveal that none of these defendants was present during the incident where the plaintiff was injected with a drug against his will; nor do they appear to be causally connected to the that incident. Flowers merely spoke with defendants Munford, Booker, Rice, Flagg, Winter, and Erica Hall, voicing his fear that Meeks meant to kill him. In addition, Captain Meeks merely stated that the plaintiff needed a "shot" when he expressed his fear of her.[6] Flowers did not receive the injection in Captain Meeks' presence; instead, he was first transported to the prison hospital – which is located in a different building altogether. The plaintiff also wrote to Commissioner Cain about his fear of Meeks, but Cain did not respond. Finally, it appears that, after the injection incident, Lt. Kilpatrick conducted urinalysis to determine whether Flowers had illegal drugs in his system.

None of these actions constitute participation in the forced injection incident. As such, Flowers' allegations against these defendants will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### No Supervisor Liability: Cain, Munford, Meeks

To hold a defendant liable as a supervisor under 42 U.S.C. § 1983, he must be personally

---

[6] In his supplemental response to the court's show cause order, Flowers argues that Meeks participated in the events by canceling his dentist appointment (though he states that Nurse Stewart also canceled the appointment). However, canceling an appointment does not rise to the level of a constitutional violation. In any event, Flowers was relocated to another prison shortly after the incident and can reschedule the appointment from his new location.

involved or causally connected to the alleged constitutional violation. *See Woods, supra*. A § 1983 plaintiff cannot establish that a government official violated his constitutional rights simply by virtue of the official's role as a supervisor. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). Similarly, a § 1983 plaintiff cannot proceed against a prison official based solely on the official's participation in the prison grievance process. *Dehghani v. Vogelgesang*, 226 Fed.Appx. 404, 406 (5th Cir. 2007).

There are only two scenarios in which a supervisor may be held liable under § 1983: (1) when he affirmatively participates in the incident, and (2) when he implements an unconstitutional policy that results in constitutional injury.[7] *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009). Indeed, a federal court cannot hold a supervisor liable for failure to supervise his subordinates – even when he is present on the scene – because, after *Ashcroft v. Iqbal*, 556 U.S. 662, 662, 129 S. Ct. 1937, 1939, 173 L. Ed. 2d 868 (2009), "a government official can be held liable only for his own misconduct." *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011).

Though failure to train employees may rise to the level of an official government policy – giving rise to a claim under 42 U.S.C. § 1983 – such claims are a rarity:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See *Oklahoma City v. Tuttle,* 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Canton,* 489 U.S., at 388, 109 S.Ct. 1197. Only then "can such a shortcoming be properly thought of as a

---

[7] The plaintiff argues in his response to the show cause order that Munford's failure to find fault with the actions of the other defendants – and the "withholding" of essential services as punishment – constitute a "de facto" policy. As Flowers has alleged no facts to show that any defendant has withheld essential services as a punishment, this allegation is without substantive merit.

city 'policy or custom' that is actionable under § 1983." *Id.*, at 389, 109 S.Ct. 1197. *Connick v. Thompson*, 563 U.S. 51, 61, 131 S. Ct. 1350, 1359–60, 179 L. Ed. 2d 417 (2011). In addition, to move forward with a failure-to-train claim against a supervisor, the plaintiff must allege "[a] pattern of similar constitutional violations by untrained employees … to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quoting *Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

Flowers has not alleged facts to show that defendants Cain, Munford, and Meeks failed to train their subordinates regarding use of force or the compulsory administration of medication. The plaintiff alleges that he sent a sensitive issue grievance about the incident to MDOC Commissioner Burl Cain, who did not respond. Doc. 5 at 12. As Cain's involvement was limited to participation in the grievance process, the plaintiff's allegations against him fail to state a valid § 1983 claim.

Regarding Warden Munford, Flowers makes the bare allegation that he "fail[ed] to properly train Captain Laquita Meeks in the application of her official duties to protect from harm." Doc. 5 at 8. The plaintiff has not alleged that defendant Meeks took part in the injection incident; as such, the type, quality, or effectiveness of Warden Munford's training in this area is not relevant to this case. As such, Flowers' claim against Warden Munford for failure to train Captain Meeks will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

As to defendant Meeks, the plaintiff similarly alleges that she "fail[ed] to properly train Sgt. Brown in the application of his official duties to the use of force and to protect from harm." *Id*. However, Flowers has not alleged a "pattern of similar constitutional violations by untrained [MDOC] employees." *Connick, supra* at 409. Accordingly, his failure-to-train allegations against Captain Meeks will also be dismissed with prejudice.

In sum, the plaintiff does not allege that defendants Cain, Munford, or Meeks had any

personal involvement or were causally connected to the injection incident in any way.[8] Thus, his allegations regarding these three defendants' roles as supervisors will be dismissed with prejudice for failure to state a claim upon which relief could be granted.

### Conclusion

For the reasons set forth above, defendants **Meeks**, **Munford**, **Brent**, **Moffit**, **Cain**, **Booker**, **Rice**, **Flagg**, **Winter**, **Erica Hall**, and **Kilpatrick** will be dismissed from this case for failure to state a claim against them upon which relief could be granted. A separate service and scheduling order will issue as to defendants **Nurse Stewart**, **Sgt. Brown**, **C.O. Charlie Thomas**, and **Transportation Officer Breanna Hall** regarding the plaintiff's claims of compulsory administration of medication and the use of excessive force in doing so. A judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 23rd day of January, 2024.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE

---

[8] Flowers argues in his response to the show cause order that Meeks' mention of a "needle" shortly before the injection "indicates that Nurse Stewart's action in this [case] [was] either influenced or … committed under the direction of Meeks[,] … the only captain over [his unit]." Doc. 24 at 1. However, Flowers has not alleged that Meeks, as Captain (a security officer), has any authority over medical personnel, generally, or Nurse Stewart, specifically, regarding administration of medication. Flowers' speculation about Meeks' role in the matter does not rise to the level of a claim against her for involvement in the injection incident (a medical decision).