IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**RAPHAEL FLOWERS**    **PLAINTIFF**

**v.**     **No. 4:23CV131-SA-JMV**

**CAPTAIN LAQUITA MEEKS, ET AL.**    **DEFENDANTS**

**MEMORANDUM OPINION**

This matter comes before the court on the *pro se* prisoner complaint of Raphael Flowers, who challenges the conditions of his confinement under 42 U.S.C. § 1983 – which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.[1] The plaintiff alleges that the defendants did not treat his abscessed tooth and, later, injected him with a drug against his express consent. In addition, he alleges that defendants Brown, Hall, and Thomas jerked on his leg iron chain, causing him to fall backwards and hit his head on the floor. Doc. 5 at 36. He also alleges that defendant Thomas used excessive force by grabbing his groin until he fell to his knees. *Id*. The defendants have moved [52], [54] separately for summary judgment, arguing that Flowers did not exhaust his administrative remedies before filing the instant suit. Flowers then filed a cross-motion [58] for summary judgment, which is, in substance, a response to the defendants' motions. Briefing is complete, and the matter is ripe for resolution. For the reasons set forth below, the motions [52], [54] by the defendants for summary

---

[1] *See* 42 U.S.C. § 1997e(a); *see also Williams v. Henagan,* 595 F.3d 610 (5th Cir. 2010) (PLRA applies when inmate is incarcerated at the time he files suit, even if he was released during pendency of suit).

judgment will be granted; the plaintiff's motion [58] will be denied, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.

## Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998).

Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[2]

Raphael Flowers brought this action on April 26, 2023, in the Southern District of Mississippi and filed an amended complaint [5] on May 25, 2023, which transferred the case to this court on July 19, 2023. The amended complaint alleges, *inter alia*, that the defendants violated Flowers's Eighth Amendment rights by: (1) preventing him from receiving dental treatment; (2) injecting him with medication against his will; and (3) using excessive force against him. Amended Complaint [5] at 9-10. Flowers alleges that the dental care incident occurred on November 22, 2021, and the incident regarding injection without his consent occurred on January 31, 2022. *Id.*; *see also* Memorandum Opinion [30] at 2-3 (describing the plaintiff's allegations).

He filed a grievance through the Administrative Remedy Program complaining of the alleged forced injection on January 31, 2022. Exhibit A [52-1] to the motion of codefendants Thomas and

---

[2] The court has drawn the facts primarily from the defendants' briefs [53], [55] in support of their motions for summary judgment, as those facts are both well-documented and undisputed.

Brown. The undated grievance was received by the ARP office on February 6, 2023, and assigned number MSP-23-154. The grievance was rejected because it did not comply with the requirements of the ARP in that it was filed more than thirty days after the alleged event complained of and requested relief that was beyond the power of the ARP to grant. Neither party has provided documentation that the plaintiff filed a corrected grievance.

## Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a), requires prisoners to exhaust any available administrative remedies before filing suit under 42 U.S.C. §1983. The exhaustion requirement protects administrative agency authority, promotes efficiency, and produces "a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S.81, 89 (2006).

A prisoner cannot satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal" because "*proper* exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 83-84 (2006) (emphasis added); *see also Johnson v. Ford*, 261 F. App'x 752, 755 (5th Cir. 2008)( the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement)(*citing Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003)); *Lane v. Harris Cty. Med. Dep't*, No. 06-20935, 2008 WL 116333, at *1 (5th Cir. Jan.11, 2008)( under the PLRA, "the prisoner must not only pursue all available avenues of relief; he must also comply with all administrative deadlines and procedural rules"). Indeed, "a prisoner must now exhaust administrative remedies even where the relief sought – monetary damages – cannot be granted by the administrative process." *Booth v. Churner*, 532 U.S. 731, 739 (2001).

The requirement that claims be exhausted prior to the filing of a lawsuit is mandatory. *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir.2012). "Whether a prisoner has exhausted administrative remedies is a mixed question of law and fact." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). As "exhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time, . . . judges may resolve factual disputes concerning exhaustion without the participation of a jury." *Id*. at 272. A prisoner should face a significant consequence for deviating from the prison grievance procedural rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievance complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford* at 95.

Mississippi Code Annotated § 47-5-801 grants the Mississippi Department of Corrections the authority to adopt an administrative review procedure at each of its correctional facilities. The Mississippi Department of Corrections has thus set up an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. This court approved the ARP Program in *Gates v. Collier*, GC 71-6-S-D (N.D. Miss. Feb. 15, 1994). *See also Marshall v. Price*, 239 F.3d 365, 2000 WL 1741549, at *1 (5th Cir. 2000). An inmate must complete two steps to exhaust the ARP process. *See Gates v. Barbour*, No. 4:71CV6-JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010); *Threadgill v. Moore*, No. 3:10CV378-TSL-MTP, 2011 WL 4388832, at *3 n.6 (S.D. Miss. July 25, 2011).

The inmate may initiate the two-step ARP grievance process by submitting his allegations in writing to the prison's Legal Claims Adjudicator within thirty days of the

incident.[3] *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss. May 29, 2013). The Adjudicator initially screens the complaint and determines whether or not to accept it into the ARP process as a grievance. *Id*. The screening phase thus operates as a filter – applied before the formal grievance process begins – to remove procedurally defective or otherwise invalid grievances. As set forth above, a prisoner cannot satisfy the exhaustion requirement by filing a procedurally defective grievance or appeal. *Woodford, supra*. Hence, rejection of a grievance during the screening phase terminates the grievance – and does *not* count as exhaustion of the grievance process. *See Seales v. Shaw*, No. 5:15-CV-59-KS-MTP, 2016 WL 616749, at *3 (S.D. Miss. Jan. 26, 2016), *report and recommendation adopted sub nom. Seales v. Wilkinson Cty. Corr. Facility*, No. 5:15-CV59-KS-MTP, 2016 WL 616385 (S.D. Miss. Feb. 16, 2016) (finding rejection during initial MDOC screening process not to constitute exhaustion); *Goldmon v. Epps*, No. 4:14-CV-0112-SA-SAA, 2015 WL 5022087, at *3 (N.D. Miss. Aug. 24, 2015) (same); *see also Robinson v. Wheeler*, 338 Fed. Appx. 437 (5th Cir. 2009) (per curiam) (not reported) (upholding Louisiana initial screening provision of prison grievance process). However, if the defects in the original grievance were minor ("technical" or "matters of form"), an inmate may submit a corrected grievance within five days of the rejection:

> If a request is rejected for technical reasons or matters of form, the inmate shall have five days from the date of rejection to file his/her corrected grievance.

*See* https://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited April 3, 2019)).

---

[3] If an inmate is found guilty of a prison rule violation, he may appeal that finding through the ARP process. Inmate Handbook, Section VIII, Paragraph XI. However, the appeal of a rule violation through the ARP is a one-step process (in contrast to the two-step process for resolving grievances). *Id*.

If accepted as a valid grievance, the complaint is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate.[4] *Id*. If the inmate is unsatisfied with the First Step Response, he may continue to the Second Step by completing the appropriate ARP form and sending it to the Legal Claims Adjudicator. *Id*. The Superintendent, Warden, or Community Corrections Director will then issue a final ruling (the Second Step Response) – which completes the ARP process.[5] *Id*. If the inmate is unsatisfied with that response, he may file suit in state or federal court. *Id*.

In this case, the dates of the incidents in question were November 22, 2021 (refusal to treat Flowers' tooth) and January 31, 2022 (injection of medication against Flowers' will).[6] The latest date that he could have filed a timely grievance regarding these issues was thus March 1, 2022 (January 31, 2022 + 30 days). The undated grievance involving the allegations in this case was stamped received by the Administrative Remedy Program on February 6, 2023, some eleven months after the deadline to submit a prison grievance had expired. Thus, Flowers' grievance was

---

[4] The submission and screening of the plaintiff's complaints do not constitute the beginning of the ARP process. Instead, the ARP grievance process begins when the inmate's submission is "accepted" as a grievance *after* initial screening. Inmate Handbook, Chapter VIII, Paragraph IV(H).

[5] The grievance process will also be deemed complete if more than 90 days elapses from the beginning of the process (acceptance of the grievance after screening) without issuance of a Second Step Response Form (the normal way to complete the grievance process). Inmate Handbook, Chapter VIII, Paragraph VIII(A). In the absence of a response in a step of the ARP process, the inmate may not simply wait for the 90-day deadline to expire. *Id*. Instead, for each step without a response, he must wait until the deadline for a written response for that step expires, then move to the next step in the process. *Id*. If the inmate has submitted the proper forms for each step, yet 90 days elapses without issuance of a Second Step Response Form, then he has completed the grievance process and may then seek relief in State or Federal court.

[6] Flowers alleges in his cross-motion for summary judgment (which operates more as a response to the defendants' summary judgment motion) that he filed a prison grievance on September 13, 2021 – some two months *before* the earliest incident occurred on November 22, 2021. Doc. 58 at 2, 4, 6. Clearly, any grievance Flowers filed in September 2021 involved allegations unrelated to those in the instant case.

rejected on procedural grounds and did not serve to exhaust his administrative remedies. The defendants' motions for summary judgment will therefore be granted, and Flowers' summary judgment motion will be denied.

## Conclusion

For the reasons set forth above, the defendants' motions [52], [54] for summary judgment will be granted; Flowers' cross-motion [58] will be denied, and the instant case will be dismissed without prejudice for failure to exhaust administrative remedies.[7] A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the 17th day of December, 2024.

/s/ Sharion Aycock
U. S. DISTRICT JUDGE

---

[7] Though the instant summary judgment motions were filed only on behalf of defendants Brown, Thomas, and Stewart, the failure-to-exhaust defense also benefits the defendant Breanna Hall (who was served with process, but has not appeared in the case). Where a defending party shows that a plaintiff has no cause of action, the defense also benefits an unserved, non-moving, or defaulting defendant. *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001).